IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE BASE HOLDINGS, LLC, | § | |
| | § | |
| Debtor. | § | |
| | § | |
| CENTER OPERATING COMPANY, | § | |
| L.P., | § | |
| | § | Civil Action No. 3:13-CV-1584-D |
| Plaintiff- | § | (Bank. Ct. No. 09-34269-SGJ-7; |
| Appellee, | § | Adv. No. 09-03256-SGJ) |
| | § | |
| VS. | § | |
| | § | |
| BASE HOLDINGS, LLC , | § | |
| | § | |
| Defendant- | § | |
| Appellant. | § | |

_____

APPEAL FROM THE
UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS

FITZWATER, Chief Judge:

In this appeal from a final summary judgment of the bankruptcy court entered in an

adversary proceeding in which the debtor asserted state-law counterclaims but apparently did

not file an objection to the creditor's proof of claim, subsequent developments in the law of

this circuit interpreting *Stern v. Marshall*, ___ U.S. ___, 131 S.Ct. 2594 (2011), require that

the judgment be vacated and the adversary proceeding remanded for further proceedings.

I

Defendant-appellant Base Holdings, LLC ("Base"), a chapter 7 debtor, appeals the

bankruptcy court's final summary judgment entered in favor of plaintiff-appellee Center

Operating Company, L.P. ("Center").  Pursuant to a Lease Agreement ("Lease"), Base leased commercial property from Center at the American Airlines Center in Dallas and opened a restaurant at the location.  The restaurant struggled financially, and Base was unable to satisfy all of its financial obligations.  After Base allegedly failed to make timely rent payments, Center notified Base of its default and instituted eviction proceedings in county court.  Soon thereafter, Base filed for chapter 11 protection, which the bankruptcy court converted to chapter 7 on Base's motion.

Center initiated the instant adversary proceeding against Base, seeking a declaratory judgment that it had not materially breached the Lease, that any claims Base might have for punitive or consequential damages were barred by the Lease, and that Base was obligated to begin paying rent to Center on October 1, 2008.[1]  Base, and then Base's trustee (the "Trustee" or "Base"[2]), answered Center's complaint,[3] asserting both affirmative defenses and counterclaims.[4]  Many of Base's affirmative defenses and counterclaims rest on

---

[1]Center initiated the adversary proceeding under Fed. R. Bankr. P. 7001(9), which specifies that a proceeding to obtain a declaratory judgment relating to any of the adversary proceedings described in Rules 7001(1)-(8) is an adversary proceeding.

[2]For clarity, unless the context otherwise requires, the court will refer both to the Trustee and Base as "Base."

[3]Base filed its original answer and counterclaim before the Trustee was appointed. The Trustee filed the second amended answer and counterclaim.  The bankruptcy court's rulings relate to the second amended answer and counterclaim.

[4]Base alleged the following affirmative defenses: (1) that declaratory relief was inappropriate pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 37.006(a); (2) breach of the warranty of quiet enjoyment; (3) that Base was discharged from fulfilling its obligations under the Lease because Center committed a material breach of the Lease; (4) estoppel; (5)

- 2 -

representations that a Center employee allegedly made to a Base executive regarding a parking contract that Center was obligated to procure under the Lease for use by restaurant patrons.

Base filed a motion to reject the Lease, which the bankruptcy court granted. Center then filed a proof of claim.[5]   Center seeks $297,989.33 in unpaid prepetition rent,

---

waiver; (6) unclean hands; and (7) impossibility.  Base also purported to incorporate its counterclaims as additional affirmative defenses.  Base alleged the following counterclaims: (1) statutory real estate fraud under Tex. Bus. & Com. Code Ann. § 27.01(a)(1); (2) statutory real estate fraud under Tex. Bus. & Com. Code Ann. § 27.01(a)(2); (3) common law fraud in the inducement by affirmative representation; (4) common law fraud in the inducement by nondisclosure; (5) common law fraud; (6) string along fraud; (7) negligent misrepresentation; (8) unjust enrichment; (9) breach of the warranty of suitability; and (10) breach of lease.

[5]The court takes judicial notice, *sua sponte*, of the following documents from the bankruptcy court proceedings: (1) the claims register; (2) Center's proof of claim; (3) the transcript of the bankruptcy court's June 28, 2010 hearing on Center's motion to dismiss; (4) the bankruptcy court's order granting Base's motion to realign the parties; (5) the transcript of the bankruptcy court's February 6, 2012 hearing on Base's motion to withdraw the reference; and (6) Base's motion to withdraw the reference.  The court is authorized by Fed. R. Evid. 201(c)(1) to take notice of these documents.  *See also Reneker v. Offill*, 2010 WL 1541350, at *5 (N.D. Tex. Apr. 19, 2010) (Fitzwater, C.J.) (explaining that courts may take judicial notice of judicial record in prior related proceedings).  The court judicially notices only those adjudicative facts that "cannot reasonably be questioned," *Reneker v. Offill*, 2012 WL 2158733, at *12 (N.D. Tex. June 14, 2012) (Fitzwater, C.J.) (quoting Fed. R. Evid. 201(b)(2)), such as the fact that Center filed a proof of claim, that it appears from the record that Base has not filed an objection to the proof of claim, and that the bankruptcy court concluded that it was necessary to decide Base's counterclaims, *see id.* at *14 (approving notice of occurrence of filings, and positions taken in filings, in related proceeding).  *See Anderson v. FDIC*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) (taking judicial notice of proof of claim, and noting that bankruptcy court is unit of district court and that district court can take judicial notice of its own records); *Prologo v. Flagstar Bank, FSB*, 471 B.R. 115, 120 n.4 (D. Md. 2012) (taking notice of bankruptcy court records in appeal to district court); *In re Royce Homes LP*, 466 B.R. 81, 86 n.2 (S.D. Tex. 2012) (same).

construction, and other charges.  Center also seeks $1,297,929.50 in post-petition rent from the bankruptcy estate pursuant to 11 U.S.C. § 502(b)(6)(A)(i).  As of today, Base apparently has not filed an objection to Center's proof of claim.

In the adversary proceeding, Center filed a motion to dismiss Base's counterclaims. The bankruptcy court granted the motion in part, dismissing with prejudice Base's counterclaims for breach of the warranty of quiet enjoyment, breach of the warranty of suitability,[6] and unjust enrichment.  The bankruptcy court denied Center's motion to dismiss the remaining counterclaims.  After the parties engaged in discovery, Center and Base filed motions for summary judgment.  Shortly thereafter, the bankruptcy court granted Base's motion to realign the parties.[7]

While the summary judgment motions were pending, Base filed a motion to withdraw the reference.  Citing *Stern*, Base argued that the bankruptcy court lacked constitutional authority to enter a final order.  The bankruptcy court addressed the motion to withdraw the reference and the summary judgment motions in two rulings filed the same day: a report and recommendation addressing the motion to withdraw the reference, and a memorandum opinion and order addressing the parties' cross-motions for summary judgment.  In the report and recommendation, the bankruptcy court recommended that this court deny the motion to

---

[6]The bankruptcy court granted Center's motion to dismiss Base's counterclaim for breach of the warranty of quiet enjoyment only to the extent Base intended to assert such a claim.

[7]Thus Base's counterclaims are treated as if they were asserted in an adversary complaint.

withdraw the reference on the grounds that it was necessary to resolve Base's counterclaims as part of the process of allowing or disallowing Center's proof of claim (thus distinguishing the case from *Stern*), and that Base should be deemed to have consented to the bankruptcy court's finally adjudicating the adversary proceeding. *See In re Base Holdings, LLC*, No. 09-34269-SGJ-7, Adv. No. 09-03256, at *8-11 (Bankr. N.D. Tex. July 3, 2012) ("*Base I*"). Alternatively, the bankruptcy court recommended that, if this court determined that the bankruptcy court lacked constitutional authority to enter final orders on the counterclaims, the court consider the bankruptcy court's memorandum opinion and order on the parties' cross-motions for summary judgment to be a proposed ruling and adopt the decision as its own. *Id.* at *9. In the memorandum opinion and order, the bankruptcy court granted Center's summary judgment motion as to all but one of Base's counterclaims, and it denied Center's motion on the question whether Center improperly charged rent before December 6, 2008. *See In re Base Holdings, LLC*, 487 B.R. 727 (Bankr. N.D. Tex. 2012) ("*Base II*"). This court later adopted the bankruptcy court's report and recommendation in *Base I* and denied the motion to withdraw the reference. *See In re Base Holdings, LLC*, 2013 WL 357607, at *1 (N.D. Tex. Jan. 30, 2013) (Fitzwater, C.J.) ("*Base III*").

After this court denied the motion to withdraw the reference, Center and Base stipulated regarding the remaining contested factual issues, enabling the bankruptcy court to enter a final judgment based on its memorandum opinion and order in *Base II*. Base then filed the instant appeal.

In Base's reply brief, under the heading "recent developments," it asserts that the

bankruptcy court erred in recommending that this court deny the motion to withdraw the reference. Base cites the Supreme Court's grant of a petition for a writ of certiorari in *In re Bellingham Insurance Agency, Inc.*, 702 F.3d 553 (9th Cir. 2012), *cert. granted sub nom. Executive Benefits Insurance Agency v. Arkison*, 82 U.S.L.W. 3416 (U.S. June 24, 2013) (No. 12-2100) (addressing whether Article III allows bankruptcy courts to hear matters based on express or implied consent, and whether a bankruptcy judge may submit proposed findings of fact and conclusions of law for de novo review by a district court in a core proceeding under 28 U.S.C. § 157(b)).

Shortly before and after this court heard oral argument on this appeal, the Fifth Circuit decided *In re Frazin*, 732 F.3d 313 (5th Cir. 2013), *petition for cert. filed*, ___ U.S.L.W. ___ (U.S. Feb. 12, 2014) (No. 13-1003), and *In re BP RE, L.P.*, 735 F.3d 279 (5th Cir. 2013), *reh'g en banc denied*, ___ F.3d ___, Nos. 12-51270, 12-51279 (5th Cir. Feb. 28, 2014). In *Frazin* the Fifth Circuit clarified how courts in this circuit should apply *Stern*. In both *Frazin* and *BP RE* the court held that consent and waiver cannot cure a bankruptcy court's lack of authority to enter final judgment on state-law counterclaims. *See Frazin*, 732 F.3d at 320 n.3; *BP RE*, 735 F.3d at 288.

II

Because of developments in the law since the bankruptcy court decided *Base II* and this court decided *Base III*, and because there are unsettled issues in the record that are material to a *Stern* analysis (examples of which the court will address below), the court concludes that the bankruptcy court's final judgment must be vacated and this adversary

proceeding remanded for further proceedings.  The Fifth Circuit's decisions in *Frazin* and *BP RE* make clear that parties cannot cure a bankruptcy court's lack of constitutional authority to enter final judgment through consent or waiver.  *See Frazin*, 732 F.3d at 320 n.3; *BP RE*, 735 F.3d at 288.  And in light of the guidance provided in *Frazin*, this court is unable to determine whether the bankruptcy court had constitutional authority to enter a final judgment on Base's state-law counterclaims.

The court starts from the premise that neither *Stern* nor *Frazin* curtails the bankruptcy court's constitutional authority to fully adjudicate Center's proof of claim.  *See Frazin*, 732 F.3d at 319 n.2 ("We do not decide today whether the *Stern* holding extends to other core proceedings under [28 U.S.C.] § 157(b)(2).").  Both before and after *Stern* and *Frazin*, the bankruptcy court should "examine and resolve all challenges" made to Center's proof of claim, "even if the challenges could or do constitute one or more elements of state-law or other causes of action that must be finally resolved by an Article III or state court." *Id.* at 325 (Owen, J., concurring). And the bankruptcy court is not "required to determine, in advance, which facts will ultimately prove strictly necessary to resolve a creditor's proof of claim." *In re Global Technovations Inc.*, 694 F.3d 705, 722 (6th Cir. 2012) (addressing *Stern* issue).

In the usual case, the debtor's objection defines the range of issues that must be decided during the claims-allowance process.  *See In re Simmons*, 765 F.2d 547, 552 (5th Cir. 1985) (stating that objection "plac[es] the parties on notice that litigation is required to resolve an actual dispute between the parties").  But in the present case, so far as the court can determine from the appellate record and the judicially-noticed records, Base has not filed

an objection to Center's proof of claim.  Thus the bankruptcy court is left to adjudicate Base's objections, if any, based on its state-law counterclaims.[8]  This task may not be straightforward because some of Base's counterclaims provide multiple, varied remedies that could impact how Center's proof of claim is adjudicated by the bankruptcy court, and, in turn, affect its authority under *Stern*.  For example, under Texas law, a party who prevails on a fraudulent inducement claim can elect rescission, damages, or both.  *See, e.g., Aegis Ins. Holding Co. v. Gaiser*, 2007 WL 906328, at *3 (Tex. App. Mar. 28, 2007, pet. denied) (mem. op.) (holding that party can seek rescission or damages for fraudulent inducement).  If, for example, the bankruptcy court construes Base's state-law fraudulent inducement counterclaim as one seeking rescission, then Base is arguably contending that the Lease is unenforceable against it.  *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 331 (Tex. 2011) ("A contract is subject to avoidance on the ground of fraudulent inducement."); *see also Anderson, Greenwood & Co. v. Martin*, 44 S.W.3d 200, 209 (Tex. App. 2001, pet. denied) ("[F]raud in the inducement is fatal to a contract and a good defense against the enforcement of such contract."); *Evans v. S. Methodist Univ.*, 87

---

[8]When a debtor intends to assert both objections and counterclaims, it should style the filing in a way that expressly manifests this intent.  *Cf. In re Frazin*, 413 B.R. 378, 386-87 (Bankr. N.D. Tex. 2009) (recounting allegations in debtor's "First Amended Original Complaint of Malpractice and to Determine Claim and Objection to Claim"); *Simmons*, 765 F.2d at 552 & n.6 (reciting requirement that objection contain proper description designating it as such, while noting that failure to do so does not necessarily waive right to object). Nevertheless, there is precedent for the bankruptcy court's authority to deem Base's counterclaims to be objections.  *See, e.g., In re Envirodyne Indus., Inc.*, 183 B.R. 812, 819 (Bankr. N.D. Ill. 1995) ("A counterclaim can serve as a proper objection to a creditor's claim.").

S.W.2d 918, 919 (Tex. App. 1935, writ granted) (stating that claim for rescission "repudiates the transaction and counts upon its invalidity"), *rev'd on other grounds*, 115 S.W.2d 622 (Tex. 1938). But if the fraudulent inducement counterclaim is deemed to be one for damages, Base's objection necessarily seeks to affirm the validity of the Lease. *See id.* (stating that "bringing of the suit to recover damages is of itself the ratification of the contract"); *see also Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 676 (Tex. 2000) (stating that defrauded party may "stand to the bargain and recover damages") (quoting *Dall. Farm Mach. Co. v. Reaves*, 307 S.W.2d 233, 239 (Tex. 1957)). This means that, if the bankruptcy court construes Base's fraudulent inducement counterclaim as one for damages, the Lease remains in force, and Center retains the right to seek damages for Base's alleged breach of the Lease. *Cf. Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 44 (Tex. 1998) (noting that jury found plaintiff fraudulently induced defendant to enter contract but awarded defendant damages for breach).

If the bankruptcy court determines that Base is objecting to Center's proof of claim on a rescission theory, the bankruptcy court would apparently have to consider the merits of the fraudulent inducement counterclaim to adjudicate the proof of claim.[9] If the bankruptcy

---

[9]In *Base II* the bankruptcy court held that Center was entitled to summary judgment on Base's state-law fraud counterclaims because there was an "utter absence of *any* evidence that [Base] suffered any injury." *Base II*, 487 B.R. at 751 (bold font omitted). If the bankruptcy court was proceeding under the assumption that Base objected to Center's proof of claim on a rescission theory, it appears to have applied an incorrect formulation of the damages requirement. Under Texas law, when a party seeks to avoid a contract, a showing of "some pecuniary injury is essential," but the injury "need not be measured in money." *Russell v. Indus. Transp. Co.*, 258 S.W. 462, 465 464 (Tex. 1924); *see also Arisma Grp.,*

court then determines that the objection fails because Base has not established one of the elements of fraud, it would have constitutional authority under *Stern* and *Frazin* to enter a final judgment on Base's state-law fraud counterclaims as well.[10]   This is so because, assuming *arguendo* that the bankruptcy court would reach each of these conclusions, Base's state-law fraud counterclaims "would necessarily have been resolved in the claims-allowance process." *Frazin*, 732 F.3d at 320.

But if the bankruptcy court determines that Base is objecting to Center's proof of

---

*LLC v. Trout & Zimmer, Inc.*, 2009 WL 3573418, at *6 (N.D. Tex. Oct. 30, 2009) (Lindsay, J.) (applying *Russell*); *Anderson, Greenwood & Co.*, 44 S.W.3d at 211-12 (same).

Moreover, there are circumstances when a party seeking rescission is not required to prove damages.  A party can avoid a contract without showing damages when the offeror induces the offeree to enter a contract for land by fraudulently representing that the land is suitable for the offeree's purposes, but the land is "wholly or substantially unfit[] for such use."  *Nance v. McClellan*, 89 S.W.2d 774, 776 (Tex. 1936).  In *Nance* the offeror represented that there was a public road running along the north end of the property on which the offeree intended to place a hotel.  In fact, the "road" was an informal path over a railroad's right-of-way, and the property was otherwise surrounded by private properties. *See id.* at 777.  Still, this informal path did abut the property, and it "had been used by the public for many years." *Id.* at 775.  Applied to the facts of this case, *Nance* instructs that the fact that Center provided a substitute parking lot for Base's customers is not dispositive. Rather, the question is whether, under the circumstances, the restaurant space was "wholly or substantially unfit" for a million dollar restaurant.  These are questions that may need to be addressed, and, if so, must be resolved in the bankruptcy court.

[10]"To establish a claim for fraudulent inducement under Texas law, [the plaintiff] must generally show that the [contract] [was] procured by fraud and must demonstrate each element of fraud[.]" *AMS Staff Leasing, NA, Ltd. v. Associated Contract Truckmen, Inc.*, 2006 WL 1096777, at *3 (N.D. Tex. Apr. 26, 2006) (Fitzwater, J.) (internal quotation marks omitted).  Thus Base's failure to establish an essential element of fraud would defeat both its fraud and fraudulent inducement counterclaims.

claim on a damages theory[11]—such as setoff or recoupment—the scope of the bankruptcy court's statutory and constitutional authority is uncertain.[12]  This is so because, by seeking damages, Base would be affirming the validity of the Lease, and it would appear that the bankruptcy court could fully adjudicate Center's contract-based proof of claim without considering Base's tort-based fraudulent inducement counterclaim.  *See, e.g., Formosa*, 960 S.W.2d at 46 ("[I]t is well established that the legal duty not to fraudulently procure a contract is separate and independent from the duties established by the contract itself.").  The fraudulent inducement counterclaim would not necessarily be resolved in the claims-allowance process.  Despite this, and adding further potential for *Stern*-based confusion, there is authority for the proposition that a debtor can object to a creditor's proof of claim on the basis of setoff or recoupment.  *Compare In re Nasr*, 120 B.R. 855, 857 (Bankr. S.D. Tex. 1990) (holding that debtor could assert these as objections), *with In re Sims*, 2009 WL 4255555, at *4 (Bankr. D. Kan. Nov. 25, 2009) (holding that debtor cannot assert damages counterclaims that may result in surplus for estate as objections).

Determining whether a debtor has asserted an objection under a damages theory such

---

[11]Under Texas law, Base may simultaneously seek rescission and damages.  *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 303 & n.3 (Tex. 2006) (allowing assertion of alternative theories of recovery before final judgment).  The court need not now decide whether Base can simultaneously object to Center's proof of claim under both theories.

[12]Although this court did not raise the issue in *Base III*, it notes that if Base seeks only damages, the bankruptcy court may even lack core jurisdiction over the fraudulent inducement counterclaim under 28 U.S.C. § 157(b)(2)(B).  If the bankruptcy court does not have core jurisdiction under § 157(b)(2)(B), it cannot have constitutional authority to enter final judgment on the state-law counterclaim.

as setoff or recoupment potentially requires a fact-intensive inquiry, which the bankruptcy court should conduct in the first instance. *See In re Mirant Corp.*, 318 B.R. 377, 381-82 (Bankr. N.D. Tex. 2004) (summarizing Fifth Circuit requirement that claims arise from the "same transaction" to allow recoupment defense); *see also Bandy v. First State Bank, Overton, Tex.*, 835 S.W.2d 609, 618 (Tex. 1992) (discussing Texas law of setoff). If the bankruptcy court determines that Base is objecting on a damages theory, it should then consider the following: whether, and under what circumstances, Base can object to Center's proof of claim under a damages theory; whether it has core jurisdiction to decide the merits of such an objection; and whether, and under what circumstances, it has constitutional authority to enter a final judgment on related state-law counterclaims. Unless and until the bankruptcy court addresses these questions, this court cannot reach uncertain issues of law—including fundamental questions about the bankruptcy court's constitutional authority—that are not ripe and have not been briefed.[13]

III

In *Base I* the bankruptcy court recommended in the alternative that this court treat the bankruptcy court's memorandum opinion and order in *Base II* as a proposed ruling if this

_____

[13]The court's reasoning throughout this opinion is exemplary, and the bankruptcy court should apply it to each of Base's state-law counterclaims. For example, it is not clear that rescission is available as a remedy for negligent misrepresentation under Texas law. *See Arisma Grp., LLC v. Trout & Zimmer, Inc.*, 2009 WL 3075203, at *4 (N.D. Tex. Sept. 25, 2009) (Lindsay, J.) (holding that damages are proper remedy for negligent misrepresentation). Assuming *arguendo* that Base is objecting to Center's proof of claim on this basis, the bankruptcy court may have to consider whether an objection on this ground is allowed under Texas law.

court concluded that the bankruptcy court lacked constitutional authority to enter final orders on Base's state-law counterclaims.  The court declines to do so in the context of this appeal. Even assuming *arguendo* that the bankruptcy court is authorized to enter such an order,[14] there are further proceedings and findings (examples of which are discussed above) that are necessary before the court can determine whether the bankruptcy court had constitutional authority to enter a final judgment on Base's state-law counterclaims.[15]

*   *   *

The bankruptcy court's final judgment is vacated, and this adversary proceeding is remanded to the bankruptcy court for proceedings consistent with this opinion.

VACATED AND REMANDED.

March 5, 2014.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

---

[14]*See* Tr. Oral Arg. at 14-15, *Exec. Benefits Ins. Agency v. Arkison*, No. 12-2100 (U.S. argued Jan. 14, 2014) (discussing whether bankruptcy judges have statutory authority to enter such orders).

[15]Base did not appeal the bankruptcy court's order granting in part Center's motion to dismiss, but the court notes that the reasoning of this decision may apply to that order as well.